FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: VALDEZ FISHERIES
DEVELOPMENT ASSOCIATION, INC.,
  Debtor.

─────────────────────────────

SEA HAWK SEAFOODS, INC.,
  Plaintiff-Appellant,

  v.

STATE OF ALASKA,
  Defendant-Appellee.

D.C. No.
CV-03-00192-A-
RRB

OPINION

Appeal from the United States District Court
for the District of Alaska
Ralph R. Beistline, District Judge, Presiding

Argued and Submitted
December 5, 2005—Seattle, Washington

Filed February 22, 2006

Before: Ronald M. Gould and Marsha S. Berzon, Circuit
Judges, and William W Schwarzer,* Senior District Judge.

Opinion by Judge Schwarzer

─────────────────────────────
*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

1919

PRINTED FOR
ADMINISTRATIVE OFFICE—U.S. COURTS
BY THOMSON/WEST—SAN FRANCISCO
© 2006 Thomson/West.

The summary, which does not constitute a part of the opinion of the court, is copyrighted

## SUMMARY

### Bankruptcy/Litigation and Procedure (Civil)

The court of appeals reversed a judgment of the district court. The court held that a bankruptcy court that had approved a settlement agreement did not have jurisdiction to interpret that agreement in an adversary proceeding between two creditors brought after the closing and dismissal of the underlying bankruptcy case.

Appellant Sea Hawk Seafoods, Inc. filed a petition in Alaska state court challenging transactions between the state and Valdez Fisheries Development Association (VFDA) as void under state fraudulent conveyance law. VFDA filed for Chapter 11 protection and filed a notice of automatic stay. Sea Hawk unsuccessfully moved for relief from the automatic stay. Sea Hawk and VFDA later entered into a settlement agreement, which provided, among other things, that the parties would dismiss all pending litigation between them and that the bankruptcy court would have continued jurisdiction over the interpretation of the settlement agreement. The state was not a party to that agreement. The bankruptcy court approved the settlement agreement, dismissed the Chapter 11 proceeding, and entered a final decree closing the VFDA bankruptcy. Sea Hawk returned to state court and sought a ruling on its fraudulent conveyance claim against the state. The state court directed the parties to seek a determination of the scope of the agreement from the bankruptcy court. Sea Hawk moved to reopen the bankruptcy case to obtain a determination of whether the agreement released its fraudulent conveyance claim against the state. At the direction of the bankruptcy court, Sea Hawk filed an adversary proceeding against the state. The court ruled that it had jurisdiction over the proceeding as one related to the bankruptcy. The court entered a stipulated final order finding that the settlement agreement released Sea Hawk's claim against the state, but

preserving Sea Hawk's objection to the bankruptcy court's jurisdiction. The district court affirmed, but on the ground that by approving the settlement agreement, the bankruptcy court retained jurisdiction to interpret it.

Sea Hawk appealed.

[1] Under 28 U.S.C. § 1334(b) (2000), district courts (and bankruptcy courts by reference) have original but not exclusive jurisdiction of all civil proceedings related to cases under Title 11. An action is related to bankruptcy if the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. The Ninth Circuit has held that there was no "related to" jurisdiction over a claim, though part of the bankruptcy estate, if it was filed after the Chapter 13 plan had been confirmed and all of the property of the estate had vested in the debtor. [2] When Sea Hawk filed its adversary proceeding, VFDA's Chapter 11 case had been dismissed and a final decree entered. When the bankruptcy court later reopened the bankruptcy case, it did so for the limited purpose of making a determination of whether the settlement agreement releases Sea Hawk's state court claims against the state. That determination could not conceivably alter the debtor's rights, liabilities, options, or freedom of action or in any way impact upon the handling and administration of the bankrupt estate.

[3] Ancillary jurisdiction may rest to enable a court to vindicate its authority and effectuate its decrees. Where a settlement agreement led to the dismissal of a case, a court has jurisdiction to vindicate its authority or effectuate its decree if the court's dismissal order explicitly retained jurisdiction or incorporated the terms of the settlement agreement. Otherwise, enforcement of the settlement agreement is for state courts. [4] Here, the bankruptcy court's orders neither retained jurisdiction over the settlement agreement nor incorporated the parties' obligation to comply with its terms. [5] Because this proceeding between Sea Hawk and the state was

not one to vindicate the court's authority or to effectuate its decree, the bankruptcy court lacked jurisdiction. The judgment of the district court had to be reversed.

## COUNSEL

Michael T. Schein, Reed Longyear Malnati & Ahrens, PLLC, Seattle, Washington, for the plaintiff-appellant.

Mary Ellen Beardsley, Assistant Attorney General, Anchorage, Alaska, for the defendant-appellee.

## OPINION

SCHWARZER, Senior District Judge:

We must decide whether a bankruptcy court, which had approved a settlement agreement, had jurisdiction to interpret that agreement in an adversary proceeding between two creditors brought after the closing and dismissal of the underlying bankruptcy case. We conclude that, in the circumstances of this case, the bankruptcy court lacked jurisdiction and we therefore reverse the district court's order.

## FACTS

Appellant Sea Hawk Seafoods, Inc., ("Sea Hawk") owns a seafood processing plant in Valdez, Alaska. In April 1995, Sea Hawk brought suit in the Alaska Superior Court against Valdez Fisheries Development Association ("VFDA") for breach of contract arising out of a failed agreement to sell its processing plant. In August 1997, the Superior Court entered judgment for Sea Hawk against VFDA for over $2 million. Alaska's Division of Investments then called VFDA's loans aggregating in excess of $7 million. In response, VFDA deliv-

ered to the State approximately $1.65 million in cash and over $400,000 in accounts receivable.

Sea Hawk then filed a petition in the Superior Court naming the State of Alaska as a party and challenging the transactions between VFDA and the State as void under state fraudulent conveyance law. The court did not rule on the petition. After the Alaska Supreme Court denied VFDA's request for a stay of the judgment against it, VFDA filed for Chapter 11 protection and filed a Notice of Automatic Stay. Sea Hawk's motion for relief from the automatic stay was denied.

After a period of negotiation, Sea Hawk and VFDA in 1999 entered into a settlement agreement (the subject of this proceeding). The State was not a party to that agreement. The agreement provided, among other things, that the parties would "dismiss[ ] all pending litigation between the two parties, with prejudice", and that the bankruptcy court shall have "continued jurisdiction over . . . the interpretation . . . of . . . th[e] Settlement Agreement." The bankruptcy court approved the settlement agreement and dismissed the Chapter 11 proceeding. On June 24, 1999, the court entered a final decree closing the VFDA bankruptcy.

Sea Hawk promptly returned to state court and sought a ruling on its fraudulent conveyance claim against the State. The State objected on the ground that the settlement agreement protected it as well as VFDA. The court directed the parties to seek a determination of the scope of the agreement from the bankruptcy court. The Alaska Supreme Court affirmed that ruling. Sea Hawk then moved to reopen the bankruptcy case to obtain a determination of whether the agreement released its fraudulent conveyance claim against the State. At the direction of the court, Sea Hawk filed an adversary proceeding against the State. The court ruled that it had jurisdiction over this proceeding as one related to the bankruptcy. After further proceedings, the court entered a stipulated final order finding that the settlement agreement released Sea

Hawk's claim against the State, but preserving Sea Hawk's objection to the bankruptcy court's jurisdiction. Sea Hawk appealed to the district court, which affirmed, but on the ground that by approving the settlement agreement, the bankruptcy court retained jurisdiction to interpret it. This timely appeal followed.

## DISCUSSION

We review a bankruptcy court's determination of its jurisdiction de novo. *In re G.I. Indus., Inc.*, 204 F.3d 1276, 1279 (9th Cir. 2000). Where bankruptcy jurisdiction can be exercised at the discretion of the court, review is for abuse of discretion. *In re Castillo*, 297 F.3d 940, 944-45 (9th Cir. 2002).

### I. "RELATED TO" JURISDICTION

[1] The bankruptcy court held that it had jurisdiction over Sea Hawk's adversary proceeding against the State under 28 U.S.C. § 1334(b) (2000). That section grants district courts (and bankruptcy courts by reference) "original but not exclusive jurisdiction of all civil proceedings . . . *related to cases under title 11*." § 1334(b) (emphasis added). In *In re Fietz*, this Court adopted the Third Circuit's articulation of the test for determining whether a civil proceeding is related to bankruptcy, stating that an action is related to bankruptcy if "*the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy*." 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984)). In *Fietz*, the Court held that there was no "related to" jurisdiction over a claim, though part of the bankruptcy estate, if it was filed after the Chapter 13 plan had been confirmed and all of the property of the estate had vested in the debtor. *Id.* at 458-59.

[2] Here, when Sea Hawk filed its adversary proceeding, VFDA's Chapter 11 case had been dismissed and a final decree entered. When the bankruptcy court later reopened the

bankruptcy case, it did so "for the limited purpose of making a determination of whether the Settlement Agreement . . . releases Sea Hawk's state court claims against the State of Alaska." That determination could not conceivably "alter the debtor's rights, liabilities, options, or freedom of action . . . [or] in any way impact[ ] upon the handling and administration of the bankrupt estate." *Fietz*, 852 F.2d at 457 (quoting *Pacor*, 743 F.2d at 994); *see In re Hanks*, 182 B.R. 930, 935 (Bankr. N.D. Ga. 1995) ("the enforcement of the settlement agreement cannot have a conceivable effect on the bankruptcy case as no case is in existence at that time").

The State argues that to preserve the bankruptcy court's ability to interpret its prior rulings, a different standard applies to postconfirmation proceedings. The Third Circuit, after reviewing the post-confirmation cases, concluded that "the essential inquiry appears to be whether there is a close nexus to the bankruptcy plan or proceeding sufficient to uphold bankruptcy court jurisdiction." *In re Resorts Int'l Inc.*, 372 F.3d 154, 166-67 (3d Cir. 2004). The court concluded that matters affecting the interpretation, implementation, consummation, execution, or administration of the confirmed plan will typically have the requisite close nexus. We adopted the close nexus test in *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1194 (9th Cir. 2005). There, we found the requisite close nexus to exist where the post-confirmation claims asserted that the defendant breached the Reorganization Plan and where the outcome of those claims could affect the implementation and execution of the Plan.

This is not a proceeding falling within the rationale of the close nexus test. Here, there was no confirmed plan and there is no claim that the dispute between two creditors, Sea Hawk and the State, would have any effect on the now-closed bankruptcy estate. The bankruptcy court has no role in the resolution of the creditors' dispute, and it is involved only fortuitously because the dispute implicates the terms of a settlement agreement approved by the court as a precondition of

the dismissal of VFDA's bankruptcy. But that agreement has been fully implemented with respect to VFDA.¹

The bankruptcy court did not consider dismissal of VFDA's bankruptcy to automatically divest it of jurisdiction over a related case. It reasoned that after dismissal, the court has discretion to retain jurisdiction over a related proceeding, citing *In re Carraher*, 971 F.2d 327, 328 (9th Cir. 1992). Carraher's fraud case had originally been filed in state court but was then removed to bankruptcy court as a related case because of the pendency of a bankruptcy case. When the underlying bankruptcy case was dismissed, the bankruptcy court decided to retain jurisdiction of the fraud case. This court held that "bankruptcy courts are not automatically divested of jurisdiction over related cases when the underlying bankruptcy case is dismissed." *Id.* Whether to retain jurisdiction of such cases is within the bankruptcy court's discretion, guided by considerations of economy, convenience, fairness and comity. *Id.*

*Carraher* does not support the bankruptcy court's decision. It stands for the proposition that a bankruptcy court may retain jurisdiction over a related proceeding pending at the time of the dismissal of the bankruptcy case. It does not support the assertion of bankruptcy jurisdiction over a proceeding initiated subsequent to the dismissal of the bankruptcy case. Thus, had the state court fraudulent conveyance action been removed to the bankruptcy court while the bankruptcy case was open, that court, in its discretion, could have retained jurisdiction after the dismissal of the bankruptcy case. But the fact that it might have been removed does not provide a basis for bankruptcy jurisdiction over a later filed proceeding.

¹ "The bankruptcy court itself noted, in an order ending the accrual of the Trustee's fees, that this dispute does "not appear to affect the bankruptcy estate or the debtor.""

## II. RETAINED JURISDICTION OVER THE SETTLEMENT AGREEMENT

The district court affirmed the bankruptcy court's order on a different theory, holding that when that court approved the settlement agreement between VFDA and Sea Hawk, it was thereby adopting the terms of the settlement agreement as part of its order. This, it held, was sufficient for it to have implicitly retained jurisdiction over that agreement.

[3] Bankruptcy courts are courts of limited jurisdiction. Having concluded that there was no "related to" jurisdiction over this proceeding, we next consider whether the bankruptcy court had ancillary jurisdiction. Ancillary jurisdiction may rest on one of two bases: (1) to permit disposition by a single court of factually interdependent claims, and (2) to enable a court to vindicate its authority and effectuate its decrees. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379-80 (1994). Only the second basis is relevant in this case. Thus, the question here is whether the bankruptcy court's jurisdiction over this proceeding is necessary in order to vindicate its authority or effectuate its decree. Where a settlement agreement led to the dismissal of a case, a court has jurisdiction to vindicate its authority or effectuate its decree if the court's dismissal order explicitly retained jurisdiction or incorporated the terms of the settlement agreement. *Id.* at 381. Otherwise, enforcement of the settlement agreement is for state courts. *Id.* at 382.

[4] Here, the bankruptcy court entered an order approving the settlement agreement and a second order dismissing the case, reciting the prior approval and stating that "[t]he conditions of the settlement hav[e] been fulfilled." The orders neither "retain[ed] jurisdiction" over the settlement agreement nor incorporated "the parties' obligation to comply with [its] terms." *Id.* at 381.

The State seeks to distinguish *Kokkonen* on two grounds. First, it argues that *Kokkonen* does not apply because the set-

tlement agreement here required and received the bankruptcy court's approval. But *Kokkonen* specifically states that "[t]he judge's mere awareness and approval of the terms of the settlement agreement do not suffice to make them part of his order." *Id.* It noted that even in a dismissal under Federal Rule of Civil Procedure 41(a)(2), which requires a court order, enforcement of the settlement agreement is for state courts in the absence of a specific retention of jurisdiction or a condition requiring the parties' compliance with the terms of the settlement agreement. *Id.* at 381-82; *see also O'Connor v. Colvin*, 70 F.3d 530, 532 (9th Cir. 1995) (stating that "even a district court's expressed intention to retain jurisdiction is insufficient to confer jurisdiction if that intention is not expressed in the order of dismissal"); *Hagestad v. Tragesser*, 49 F.3d 1430, 1433 (9th Cir. 1995) (holding that even though the district court had announced that it would oversee the drafting of settlement papers and the construction and execution of the settlement, it had not retained jurisdiction).

Next, the State argues that *Kokkonen* involved enforcement of a settlement agreement, while this proceeding is brought to interpret an agreement. It relies on dicta in two Ninth Circuit cases stating that a bankruptcy court "retains subject matter jurisdiction to *interpret* orders entered prior to dismissal of the underlying bankruptcy case." *In re Taylor*, 884 F.2d 478, 481 (9th Cir. 1989) (citing *In re Franklin*, 802 F.2d 324, 326-27 (9th Cir. 1986)). We need not decide the efficacy of these statements in light of the subsequent decision in *Kokkonen*. Suffice it to say that neither *Franklin* nor *Taylor* supports bankruptcy court jurisdiction over this proceeding. In *Franklin*, the court found that the bankruptcy court had "arising under" jurisdiction under 28 U.S.C § 1334(b) of a declaratory judgment action to determine the validity of a prior stay order issued by another bankruptcy judge. 802 F.2d at 326. In *Taylor*, the court held that the bankruptcy court lacked jurisdiction to grant relief from a stay order entered in a prior bankruptcy case that had been dismissed. 884 F.3d at 481. We find these cases not remotely apposite to the matter before us.

So far as the application of the *Kokkonen* principle is concerned, we find no relevant difference between a proceeding to enforce a settlement agreement and one to interpret it.

[5] We have considered the other arguments advanced by the State and find them without merit. We conclude that because this proceeding between Sea Hawk and the State is not one to "vindicate the [court's] authority" or to "effectuate its decree," *Kokkonen*, 511 U.S. at 380, the bankruptcy court lacked jurisdiction.

## CONCLUSION

For the reasons stated, the order of the district court is **REVERSED**.